UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSITA DEPESA,<br><br>           Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>           Defendant. | Case No. ED CV 12-1139-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when she: 1) rejected the treating and examining doctors' opinions and credited only portions of the nonexamining doctor's opinion; and 2) found that Plaintiff and her husband were not credible. For the reasons explained below, the ALJ's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this opinion.

II.   SUMMARY OF PROCEEDINGS

In August 2009, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since May 16, 2007, due to manic depression, bipolar disorder, and paranoia.  (Administrative Record ("AR") 57-58, 61, 123-27.)  The Agency denied the applications initially and on reconsideration.  (AR 57-60.)  Plaintiff then requested and was granted a hearing before an ALJ.  (AR 75.)  On June 23, 2011, she appeared with counsel and testified at the hearing.  (AR 27, 30-38.)  On August 3, 2011, the ALJ issued a decision denying Plaintiff's applications for benefits.  (AR 22-30.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-5, 14.)  This action followed.

III.   ANALYSIS

A.   <u>The ALJ Erred in Evaluating the Medical Evidence</u>

Plaintiff contends that the ALJ erred when she rejected the treating psychiatrist's and the examining psychologist's opinions that Plaintiff was disabled.  (Joint Stip. at 7-22.)  Plaintiff also argues that the ALJ erred by purporting to credit the nonexamining psychiatrist's opinion but failing to include all of his limitations in Plaintiff's residual functional capacity assessment.  (Joint Stip. at 22-23.)  For the following reasons, the Court agrees.

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (explaining that a treating physicians opinion "is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual'" (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987))).  For

this reason, a treating physician's opinion regarding a claimant's medical condition that is well-supported and not inconsistent with other substantial evidence in the record will be given controlling weight. *Orn*, 495 F.3d at 631; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Nevertheless, an ALJ may reject a treating doctor's opinion that is not contradicted by another treating or examining doctor's opinion for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). Similarly, an ALJ may discount the opinion of an examining doctor that is not contradicted by a treating or examining doctor for clear and convincing reasons. *Lester,* 81 F.3d at 830.

   1.   Dr. Joy Kong-Dyal

Psychiatrist Joy Kong-Dyal treated Plaintiff on a regular basis from October 2008 through August 3, 2011, the date of the decision. (AR 209-222, 230-36, 266-84, 299-318.) In a letter dated November 20, 2009, Dr. Kong-Dyal reported that Plaintiff "suffers from significant anxiety, depression and anger issues, and likely has a bipolar spectrum disorder." (AR 239.) She opined that Plaintiff would be unable to work for at least a year due to her frequent mood swings, inability to cope with stress, nervousness, agitation, impulsiveness, and recurrent, debilitating panic attacks. (AR 239.)

On November 25, 2009, Dr. Kong-Dyal completed a Mental Disorder Questionnaire in which she explained that Plaintiff has difficulty with remembering and organizing; gets tired often; experiences unreasonable anxiety, including the fear of being kidnaped and robbed; and suffers from panic attacks and extreme irritability. (AR 242, 246.) Dr. Kong-Dyal noted that Plaintiff was hospitalized after an attempted suicide in 1999, attended anger management counseling in

2002, and underwent seven years of impulse control counseling. (AR 242.) Dr. Kong-Dyal described Plaintiff as having an anxious and stressed appearance with poor memory and poor concentration. (AR 243.) Dr. Kong-Dyal further explained that Plaintiff has delusional thinking, grandiose perceptions, anger outbursts, is always scared, "has deep depression where she can't get out of bed for days with significant weight gain," and significant sleep disruption. (AR 244.) With respect to her daily activities, Dr. Kong-Dyal noted that Plaintiff needs help taking a shower, shopping, and cleaning the house due to anxiety and disorganization. (AR 244.) In addition, she reported that Plaintiff has no contact with family and no friends and that she has difficulty communicating and gets flustered easily. (AR 245.) Dr. Kong-Dyal concluded that Plaintiff would be unable to adapt to workplace stresses or interact properly with supervisors and would have trouble making decisions, keeping a schedule, and maintaining regular attendance. (AR 245.) She noted that Plaintiff's angry outbursts had caused her to be fired from previous jobs. (AR 245.)

On October 8, 2010, Dr. Kong-Dyal completed a Psychiatric/ Psychological Impairment Questionnaire, indicating Plaintiff's diagnoses of mood disorder, not otherwise specified, history of major depressive disorder with psychotic features, and anxiety disorder, not otherwise specified. (AR 288.) She assessed a Global Assessment of Functioning ("GAF") score of 45 and stated that Plaintiff's prognosis was guarded because her condition was chronic and "has only incompletely responded to treatment."[1] (AR 288.) In support of her

---

[1] A GAF score is the clinician's judgment of the individual's overall level of functioning. *See* American Psychiatric Association,
(continued...)

1  diagnosis, she listed clinical findings, including poor memory,
2  appetite disturbance with weight change, sleep disturbance,
3  personality change, mood disturbance, emotional lability, auditory
4  hallucinations where she hears her deceased mother's voice, panic
5  attacks, psychomotor agitation, paranoia, feelings of guilt,
6  difficulty concentrating, suicidal ideation with an attempt in 1991, a
7  frequent inability to remember the date, always getting lost, social
8  withdrawal, blunt affect, decreased energy, obsessions and compulsions
9  including repetitive cleaning, intrusive recollections of childhood
10 traumas of having almost drowned twice, persistent irrational fears,
11 generalized anxiety, and irritability.  (AR 289.)  Dr. Kong-Dyal
12 opined that Plaintiff was markedly limited in 12 out of 21 categories,
13 relating to understanding and memory, concentration and persistence,
14 social interactions, and adaptation, and moderately limited in another
15 five.  (AR 291-93.)  She also opined that Plaintiff was incapable of
16 even low stress work and would likely miss work more than three times
17 a month as a result of her impairments.  (AR 294-95.)  Finally, she
18 explained that Plaintiff was incapable of managing her own funds
19 because she is compulsive, "'spends every dime'" and ruined her credit
20 by failing to pay her bills.  (AR 295.)  Dr. Kong-Dyal repeated these
21 findings in a letter dated February 28, 2011.  (AR 297-98.)

---

[1] (...continued)
Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (2005) ("DSM-IV-TR") at 32-33.  A GAF of 41-50 indicates "[s]erious symptoms ( e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning ( e.g., no friends, unable to keep a job)."  DSM-IV-TR at 34.

The ALJ rejected Dr. Kong-Dyal's opinion on the grounds that: (1) she had opined that Plaintiff could not work and the issue of disability was reserved to the Agency; (2) her opinion was not "supported by the objective medical evidence, [was] inconsistent with the record as a whole, and demonstrate[d] a lack of understanding of social security disability programs and evidentiary requirements[;]" and (3) "her own findings in the medical records d[id] not support such mental limitations." (AR 28.) None of these reasons, alone or in combination, supports the ALJ's conclusion.

With respect to Dr. Kong-Dyal's view that Plaintiff was disabled, the fact that the doctor offered an opinion on that issue--which, clearly, is one reserved to the Agency--does not mean that her entire opinion should have been disregarded as a result. *See Orn*, 495 F.3d at 631-33 (explaining, even if treating doctor's opinion is not entitled to controlling weight, it must still be considered by ALJ).

The ALJ's reliance on the fact that Dr. Kong-Dyal did not have an understanding of social security law is equally unpersuasive. There is no requirement (or expectation) that doctors understand the nuances of social security law in order to provide an opinion in a social security case.

As to the ALJ's summary conclusions that Dr. Kong-Dyal's opinion was "not supported by the objective medical evidence" and "inconsistent with the record as a whole," these, too, are legally insufficient reasons for discounting a doctor's opinion. They are general reasons without any connection to the doctor's opinion or the evidence in the case and, as such, are neither clear or convincing. *See, e.g., Embrey*, 849 F.2d at 421-22 (holding ALJ's reasons for rejecting doctor's opinion not clear and convincing where ALJ "merely

states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects").

The ALJ's remaining justification for rejecting Dr. Kong-Dyal's opinion was that it was unsupported by "her own findings[.]" (AR 28.) Although, generally speaking, this is a legitimate reason for discounting a treating doctor's opinion, *see, e.g., Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (affirming ALJ's rejection of treating doctor's opinion that was inconsistent with doctor's own findings), it is not supported by the record. Dr. Kong-Dyal performed multiple mental status examinations on Plaintiff beginning in October 2008, and Plaintiff consistently displayed anxiousness, irritable mood, inappropriate grooming, depression, paranoia, panic attacks, delusions, and auditory hallucinations. (AR 210, 214, 218-221, 230-31, 266, 268-70, 283-84, 299-302, 304-07, 309, 311-13.) Thus, Dr. Kong-Dyal's opinion that Plaintiff suffered from significant mental/psychological impairments was completely consistent with her clinical findings and should not have been called into question on that ground.

 2. Dr. Gene Berg

On May 6, 2011, Plaintiff was evaluated by psychologist Gene Berg. Dr. Berg prepared a report and completed a Psychiatric/ Psychological Impairment Questionnaire.[2] (AR 319-28.) He performed a mental status examination, reviewed Plaintiff's medical records, and administered a psychological history questionnaire. He diagnosed Plaintiff with bipolar disorder, type I, and anxiety disorder, not

---

[2] Two pages of Dr. Berg's report are missing. (AR 319-20.)

7

otherwise specified. (AR 319, 321.) He assessed a GAF score of 50 and opined that Plaintiff was markedly limited in 16 and moderately limited in five out of 21 mental functioning categories. (AR 324-26.) Dr. Berg concluded that Plaintiff would likely miss work more than three times a month due to her limitations. (AR 328.)

The ALJ rejected Dr. Berg's opinion in part because Dr. Berg only saw Plaintiff once. (AR 28.) In lieu of Dr. Berg's opinion, the ALJ relied on the nonexamining doctor's opinion who had not seen Plaintiff at all. Obviously, this makes no sense. If the ALJ believed that the examining doctor's opinion was suspect because he only saw Plaintiff once, she should not have relied on the reviewing doctor who never saw Plaintiff at all.

The ALJ also questioned Dr. Berg's opinion because it was contained in a "check-list style form." (AR 28.) This is not entirely accurate. Dr. Berg also submitted a brief, narrative report. (AR 319-28.) As to the check-the-box form, though an ALJ can reject a doctor's opinion for this reason, she did not reject the nonexamining doctor's opinion, which is also contained primarily on a check-the-box form, for the same reason. (AR 250-63, 285-86.) Thus, the Court does not find this reason all that persuasive.

The ALJ also noted that Dr. Berg's opinions were merely conclusions, without any rationale for reaching them. (AR 28.) This is a valid reason for questioning a doctor's opinion but it is not entirely clear to the Court that Dr. Berg failed to provide any rationale. In the first place, he conducted a mental status exam and reported his findings. (AR 319-20.) Further, on the check-the-box form that he filled out, he provided the bases for his opinions where asked to do so. (AR 322, 326-27.) Though these explanations are

8

cryptic, they are there.  If further explanation is warranted, on remand, the ALJ can ask Dr. Berg to supplement his submissions.

The ALJ also discounted Dr. Berg's opinion because she thought that it appeared to be an "accommodation" to Plaintiff in that Plaintiff only visited Dr. Berg at the behest of her attorney and in connection with this social security case. (AR 28.)  This is a legitimate reason to question a doctor's opinion and may be appropriate here.  The difficulty the Court has is that it appears that most of the doctors arrived at similar conclusions.  Thus, the fact that Dr. Berg's opinion was garnered at the behest of Plaintiff's counsel is not so telling where, as here, other doctors, not hired in connection with this case, arrived at similar opinions.

Finally, the ALJ discounted Dr. Berg's opinion because it was based on unchallenged subjective complaints by Plaintiff that the ALJ found incredible.  As discussed below, however, the Court does not agree with the ALJ's credibility finding.  As such, this reason for rejecting Dr. Berg's opinion should also be revisited on remand.

    3.   <u>Reviewing Doctor H. Amado</u>

In January 2010, Dr. H. Amado, a state agency reviewing doctor, reviewed the medical records, including Dr. Kong-Dyal's records, and indicated on a Mental Residual Functional Capacity form that Plaintiff would be moderately limited in numerous functional areas, including in her ability to remember locations and work-like procedures; understand, remember, and carry out detailed tasks; maintain attention and concentration for extended periods and perform activities within a schedule; maintain regular attendance and be punctual; work with others, interact appropriately with the public and accept instructions from supervisors; perform at a consistent pace without rest periods of

unreasonable quantity and length; and respond appropriately to changes in the work setting. (AR 247-49.) Dr. Amado also completed a Psychiatric Review Technique Form, concluding in the narrative section that "the evidence is not compelling so [as to] preclude all gainful work activity" and finding that Plaintiff could perform unskilled, non-public work. (AR 250-60.)

The ALJ purportedly gave "great weight" to Dr. Amado's opinion that Plaintiff could perform at least simple, repetitive work in a non-public setting and ultimately concluded that Plaintiff was not disabled. (AR 28.) The ALJ, however, ignored Dr. Amado's other findings, i.e., that Plaintiff was moderately limited in almost every mental functioning area. (AR 28.) This was error. The ALJ cannot selectively rely on those portions of a doctor's opinion which support a finding of non-disability and ignore the other portions of the doctor's opinion which support the opposite conclusion. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

The Court also notes that Dr. Amado's opinion was rendered before Dr. Berg's. Thus, Dr. Amado could not have taken into account Dr. Berg's opinion. Though a second reviewing doctor, Dr. N. Haroun, also reviewed the medical file, (AR 286-87) he, too, reviewed the file before Dr. Berg's opinion had been submitted.

On remand, the ALJ should reassess the medical evidence and explain what evidence she accepts, what evidence she rejects, and, importantly, why.

B.  <u>The ALJ Erred in Rejecting Plaintiff's Credibility</u>

Plaintiff argues that the ALJ erred when she found that Plaintiff was not credible. (JS at 22-26, 31.) For the following reasons, the Court agrees.

ALJs are tasked with judging the credibility of witnesses.  In making these credibility determinations, they may employ ordinary credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  However, where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons, *id.* at 1283-84, which are supported by substantial evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The sum total of Plaintiff's statements in the report she submitted before the hearing and in her testimony at the hearing was that she was unable to function due to her psychological impairments.  (AR 150-55, 40-45.)  She claimed that, other than breastfeeding her baby, shopping by telephone, and preparing soup from a can, she did not contribute to the running of the household.  (AR 150-55, 40-45.)

The ALJ rejected Plaintiff's testimony on the grounds that: (1) her statements were not supported by "the clinical or diagnostic medical evidence[;]" (2) she had sought only "sporadic mental health treatment" and "cancelled or failed to show up for doctor appointments[,]" which "demonstrate[d] a possible unwillingness to do what [was] necessary to improve her condition" or that "her symptoms [were] not as severe as she purport[ed them to be;] (3) her treatment had been conservative and her mental status examinations "unremarkable"; (4) her daily activities suggested greater ability; and (5) some of the activities she performed involved physical and mental skills that could translate into the work force.  (AR 26-27.)

None of these reasons supports the ALJ's finding that Plaintiff was not credible.

While the ALJ found that Plaintiff's statements were "not supported by clinical or diagnostic medical evidence," (AR 27), this statement is not supported by the record. Each time Plaintiff visited Dr. Kong-Dyal, she conducted a mental status examination. In fact, as discussed above, Plaintiff's treatment records repeatedly documented Plaintiff's debilitating symptoms of anxiety, depression, paranoia, panic attacks, and auditory hallucinations. (AR 210, 214, 218-221, 230-31, 266, 268-70, 283-84, 299-302, 304-07, 309, 311-13.) Thus, this reason is rejected.

Similarly, the ALJ's finding that Plaintiff's allegations were undermined by her "conservative" treatment (AR 27), is contradicted by the record. Plaintiff was prescribed multiple medications to treat her mental symptoms and attended therapy, anger management counseling, and impulse control counseling. (*See*, *e.g.*, AR 242, 268, 309, 311 & 329.) Additionally, she has been hospitalized more than once for trying to kill herself. (AR 43, 242.) And, as Dr. Amado noted, the fact that Plaintiff was breastfeeding her baby limited her medication options. (AR 260.) The ALJ did not state what further intervention was possible and nothing in the record suggests that there was more radical treatment that had been proposed but not tried.

The ALJ implied that Plaintiff's condition had been successfully treated with medications, but, while the record indicates that medications have helped alleviate Plaintiff's symptoms for periods of time, there is no indication that her condition or the symptoms caused by her condition have ever completely resolved. (*See*, *e.g.*, AR 288 (Dr. Kong-Dyal indicating that Plaintiff's prognosis is "guarded"

because her "condition is chronic [and] has only incompletely responded to treatment.").)

As to the ALJ's finding that Plaintiff's treatment was sporadic and that she failed to show up for doctors' appointments at times, (AR 27), the Court does not find this to be proof that she did not suffer from psychiatric disorders. As the Ninth Circuit has explained, it is a questionable practice to conclude that a claimant who allegedly suffers from psychiatric disorders is feigning her symptoms based on the fact that she fails to seek out psychiatric treatment or follow prescribed care. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ concluded that Plaintiff's daily activities demonstrate that she has skills transferable to work. (AR 26.) The ALJ, however, failed to explain how the ability to watch television, breastfeed a baby, prepare canned soup, and shop from home translates into the workplace. *See Orn*, 495 F.3d at 639 (finding watching television is an activity that is "so undemanding that [it] cannot be said to bear a meaningful relationship to the activities of the workplace."); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (holding ALJ errs in failing to explain how ability to perform daily activities translated into the ability to perform appropriate work); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does

not in any way detract from her credibility as to her overall disability.") On remand, the ALJ should reassess the credibility issue.

C.   **The ALJ Erred in Rejecting the Husband's Testimony**

Plaintiff contends that the ALJ erred in rejecting her husband's testimony. For the reasons stated below, the issue is remanded for further consideration.

Lay testimony is competent evidence and an ALJ is required to consider it in determining if a claimant is disabled. *See Nguyen*, 100 F.3d at 1467 ("Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account."). The ALJ may, however, discount lay witness for specific reasons that are germane to the witness's testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Plaintiff's husband completed a Third Party Function Report, indicating therein that Plaintiff's day consists of waking up, going to the bathroom, breastfeeding their baby, demanding food, and insisting that he be quiet. (AR 142.) In that report and his testimony at the hearing, he detailed the difficulties Plaintiff faces each day and recounted various incidents evidencing her inability to cope with everyday life.

The ALJ rejected the husband's testimony on the grounds that it was no more than a parroting of Plaintiff's subjective complaints and because it was "not unbiased" as it was motivated by his "spousal

relationship and pecuniary interest to support" Plaintiff.  (AR 26-27.)

As to the first reason, the Court has already concluded that the ALJ's assessment of Plaintiff's credibility was infirm.  As such, the ALJ's conclusion that the husband's testimony was suspect because it parroted the wife's testimony must be reexamined on remand.

As to the ALJ's finding that the husband was biased because he was married to Plaintiff, that is not a proper reason to discount lay testimony in a social security case.  *See Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999); and *Smolen*, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.").  The fact that the husband may have had a financial incentive to help Plaintiff may be a proper ground for questioning his testimony, *see Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("[E]vidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." (emphasis in original)), but the record is not clear as to whether the husband's incentive here was any greater or any different than in any other social security case.  For all these reasons, on remand, the issue of the husband's credibility should be reexamined.

IV.   CONCLUSION

For the reasons set forth above, the Agency's decision is reversed and the action is remanded for further consideration consistent with this Memorandum Opinion and Order.[3]

IT IS SO ORDERED.

DATED: October 25, 2013.

*(signature)*

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\DEPESA, 1139\Memo Opinion.wpd

---

[3] Plaintiff asks the Court to remand the case for an award of benefits. The Court recognizes it has the authority to do so, see *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989), but concludes that that relief is not warranted here. It is not clear to the Court from the record before it that Plaintiff is entitled to benefits. Further proceedings are necessary to flesh this out. See *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (holding remand for further proceedings was appropriate where the record contained additional unanswered questions regarding the applicant's eligibility for benefits).